**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ROBERT D. ORR, )
)
        Plaintiff, )
)
v. )
) Case No. 16-2694-CM
HUSCH BLACKWELL LLP, DOUGLAS )
J. SCHMIDT, and JOHN J. CRUCIANI, )
)
        Defendants. )
)

## MEMORANDUM AND ORDER

Plaintiff Robert D. Orr brings this action pro se, claiming that defendants Husch Backwell, LLP, Douglas J Schmidt, and John J. Cruciani (collectively "Husch") caused plaintiff significant damages in conjunction with the financial collapse of Brooke Corporation ("Brooke Corp.") and Brooke Capital Corporation ("Brooke Capital"), (collectively "Brooke"), in 2008. Plaintiff was an officer and director of Brooke Corp. and Brooke Capital, which were publicly-traded companies with large investments in franchise loans. The case is now before the court on defendants' motion to dismiss (Doc. 8). After plaintiff amended his complaint, the parties filed supplemental briefing to address the new claims. Defendants ask the court to dismiss plaintiff's complaint on several independent bases: (1) lack of standing; (2) res judicata; (3) judicial estoppel; (4) statute of limitations; and (5) failure to state a claim. For the following reasons, the court grants defendants' motion.

**I.     Factual Background**

Condensing the background of this case into a succinct overview is not easy. The relationship between the parties is long and storied. The court attempts to summarize it in the following timeline:

-1-

- September 2008: In a lawsuit in this court (the "Special Master Suit"), Judge Lungstrum appointed a special master, Albert Riederer ("Special Master"), who took over Brooke's decision-making. The Special Master directed the companies and certain affiliates to file for Chapter 11 bankruptcy. Mr. Riederer then became the Chapter 11 trustee ("Chapter 11 Trustee") for the Brooke bankruptcy estate. Husch was counsel for the Special Master, and then for the Chapter 11 Trustee.

- October 28, 2008: The companies filed for bankruptcy. After that date, Husch did not perform any legal work for the Special Master.

- December 1, 2008: Husch filed a fee application, requesting approval of its fees and expenses for representation of the Special Master. Plaintiff did not object to the fees.

- December 16, 2008: Plaintiff filed for personal bankruptcy.

- December 30, 2008: The district court approved a portion of Husch's fees and expenses.

- January 7, 2009: Plaintiff filed his personal bankruptcy schedules. He did not list Husch as an entity against whom he held possible claims. He did, however, list the Special Master.

- January 22, 2009: The district court approved the remainder of Husch's fees. Plaintiff did not appeal that order.

- February 13, 2009: Plaintiff amended his personal bankruptcy schedules to add individuals and entities against whom he held possible claims. Again, plaintiff did not list Husch. He did, however, list "Other claims as yet unknown, against others growing out of damage to reputation, etc. growing out of all corporate disputes."

- June 29, 2009: The Chapter 11 bankruptcy was converted to a Chapter 7 bankruptcy, and the court terminated the Special Master's appointment.

- October 13, 2009: Husch filed an application for fees incurred representing the Chapter 11 Trustee during the Chapter 11 proceedings. Plaintiff did not object.

- November 12, 2009: The bankruptcy court approved Husch's fees for the Chapter 11 proceedings, and plaintiff did not object.

- April 12, 2010: Plaintiff was discharged from his personal bankruptcy.

- August 11, 2010: Plaintiff sued the Special Master in this court, before the undersigned judge. Plaintiff claimed that the Special Master's conduct caused Brooke to collapse, damaging plaintiff.

- October 26, 2010: The Chapter 7 Trustee filed an adversary proceeding in the bankruptcy court against Brooke Holdings, Inc. and members of plaintiff's family to recover preference payments and fraudulent transfers (the "BHI Suit").

- December 21, 2010: The undersigned judge held that plaintiff lacked standing to bring claims against the Special Master of breach of fiduciary duty, intentional misconduct, negligence, and unjust enrichment, stating, "It is only because of the corporation's harm that plaintiff suffered harm. In other words, plaintiff's injury is indirect. The corporation is the party with the cause of action, not plaintiff individually."

- July 3, 2012: The undersigned judge granted summary judgment against plaintiff on the remaining claims, holding that the Special Master's failure to report plaintiff's protests to the district court was not misconduct. Plaintiff did not appeal this ruling.

- July 10, 2014: Judgment was entered against BHI for $18,244,780.77 in the BHI suit.

- October 12, 2016: Plaintiff filed the instant case against Husch. Plaintiff's claims arise out of Husch's representation of the Special Master and the Chapter 11 Trustee. Generally, plaintiff claims that Husch caused the collapse and bankruptcy of Brooke, and mismanaged

the bankruptcy estate once Brooke was in bankruptcy. The seventeen counts contained in plaintiff's amended complaint are divided into pre-bankruptcy claims and post-bankruptcy claims:

- Count 1: Pre-Bankruptcy Malpractice and Breach of Fiduciary Duties

- Count 2: Pre-Bankruptcy Gross Negligence and Intentional Misconduct

- Count 3: Pre-Bankruptcy Fraud by Intentionally Concealing Facts to Avoid Scrutiny of its Hoarding of Franchise Royalties

- Count 4: Pre-Bankruptcy Fraud by Intentionally Concealing Orr's Protests to Engineer Husch's Appointment as Bankruptcy Estates Legal Counsel

- Count 5: Pre-Bankruptcy Fraud by Intentionally Omitting Cause of Action against Husch as an Asset in Bankruptcy Schedules Prepared by Husch

- Count 6: Pre-Bankruptcy Unjust Enrichment of Husch from Use of Franchise Royalties for Payment to Husch which Denied Benefits to Orr

- Count 7: Pre-Bankruptcy Conversion by Husch of Funds Due to Orr and other Beneficiaries of Trust Administered by BNYM

- Count 8: Post-Bankruptcy Fraud by Filing an Adversary Proceeding against Orr's Family to Stifle Orr with Intimidation and to Financially Starve Orr with a Fraudulent Judgment to Avoid Scrutiny of its Hoarding of Franchise Royalties

- Count 9: Post-Bankruptcy Fraud by Filing an Adversary Proceeding against Orr's Family to Stifle Orr with Intimidation and to Financially Starve Orr with a Fraudulent Judgment to Conceal the Firing of Brooke Capital's CEO for the Purpose of Facilitating its Hoarding of Franchise Royalties

- Count 10: Post-Bankruptcy Fraud by Filing an Adversary Proceeding against Orr's Family to Stifle Orr with Intimidation and to Financially Starve Orr with a Fraudulent Judgment to Conceal Orr's Protests in Order to Engineer Husch's Appointment as Bankruptcy Estates Legal Counsel and thereby Stifle the Allegations Made in Orr's Protests

- Count 11: Post-Bankruptcy Fraud by Filing an Adversary Proceeding against Orr's Family to Stifle Orr with Intimidation and to Financially Starve Orr with a Fraudulent Judgment to Conceal that the Bankruptcy Estates had Causes of Action against Husch

- Count 12: Post-Bankruptcy Fraud by Filing an Adversary Proceeding against Orr's Family to Stifle Orr with Intimidation and to Financially Starve Orr with a Fraudulent

> Judgment and thereby Conceal Material Facts regarding the Use of Bankruptcy Estates Assets to purchase Veris' Opinion to Substantiate the Filing of an Adversary Proceeding against Orr's Family

- <u>Count 13</u>: Post-Bankruptcy Fraud by Using Bankruptcy Estate Assets to file an Adversary Proceeding against Orr's Family for the Purpose of Intimidating Harassing and Financially Starving Orr

- <u>Count 14</u>: Post-Bankruptcy Conversion by Husch of Funds Due to Orr from Bankruptcy Estate Recoveries from Litigating Potential Causes of Action against Husch

- <u>Count 15</u>: Post-Bankruptcy Conversion by Husch of Funds Due to Orr by Charging Exorbitant Fees to the Bankruptcy Estates to Litigate Adversary Actions Exonerating and Enriching Husch without Providing Benefit to the Bankruptcy Estates

- <u>Count 16</u>: Post-Bankruptcy Malpractice and Breach of Fiduciary Duties

- <u>Count 17</u>: Post-Bankruptcy Gross Negligence and Intentional Misconduct

## II.     **Standard of Review**

The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The court construes any reasonable inferences from these facts in favor of plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The issue in reviewing the sufficiency of a complaint is not whether plaintiff will prevail, but whether plaintiff is

-5-

entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). When evaluating a Rule 12(b)(6) motion, the court may consider not only the contents of the complaint, but also the contents of any attached exhibits. *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). The court may also consider documents referred to in the complaint if they are central to plaintiff's claim and undisputed. *Alcarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). And the court may consider facts subject to judicial notice without converting the motion to one for summary judgment. *Tal*, 453 F.3d at 1265 n.24.

Because of plaintiff's pro se status, the court affords him some leniency in construing his complaint. *Asselin v. Shawnee Mission Med. Ctr., Inc.*, 894 F. Supp. 1479, 1484 (D. Kan. 1995) (citation omitted). The court may not, however, assume the role of advocate for plaintiff simply because he is proceeding pro se. *Hall*, 935 F.2d at 1110. The court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citations omitted). Nor should the court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citation omitted).

### III. Discussion

As noted above, defendants make five independent arguments why this court should dismiss all of plaintiff's claims. The court addresses each of these arguments below.

#### a. Standing

First, defendants ask the court to dismiss plaintiff's claims because, once again, he lacks standing to pursue claims for alleged wrongs to Brooke or the bankruptcy estate that indirectly resulted in damages to plaintiff.

When a corporation suffers injury, the claims arising out of that injury belong to the corporation. *Lightner v. Lightner*, 266 P.3d 539, 545 (Kan. Ct. App. 2011). Corporate shareholders lack standing to sue for harm to the corporation or for a derivative harm to themselves. *Id.* Courts recognize an exception to this rule "if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." *Richards v. Bryan*, 879 P.2d 638, 646–47 (Kan. Ct. App. 1994). But the shareholder must be able to show "that he or she suffered an injury that is not dependent on an injury to the corporation." *Lightner*, 266 P.3d at 545 (citations omitted). Similarly, only a trustee has standing to bring an action for wrongs to a bankruptcy estate. *In re Herrera*, 472 B.R. 839, 844–45 (Bankr. D.N.M. 2012).

Plaintiff's claims arise out of Husch's alleged management of Brooke before and during Brooke's bankruptcy proceedings. Among other allegations, plaintiff alleges that Husch was responsible for ceasing franchise support, using franchise fees to pay Husch's fees, and ignoring or concealing plaintiff's protests of the Special Master's conduct. As with plaintiff's previous claims against the Special Master, plaintiff's own damages are indirect. Brooke and the bankruptcy estates are the parties with the cause of action—not plaintiff individually. Plaintiff does not claim a distinct or disproportionate injury, and he also does not allege a contractual relationship with Husch. Indeed, Husch was counsel for the Special Master and the Chapter 11 Trustee, not plaintiff. If Husch committed any torts arising out of its representation of the Special Master or Chapter 11 Trustee, they were against Brooke or the bankruptcy estate and the cause of action lies with Brooke or the Trustee.

Similarly, plaintiff lacks standing to bring conversion claims (Counts 14 and 15) because the allegedly converted property was not his. *See In re Bratt*, 491 B.R. 572, 578 (Bankr. D. Kan. 2013) (requiring a "general property right in the converted property and the right to immediate possession of it"). The Trustee, and the Trustee only, has a possessory right to property of the bankruptcy estates. 11 U.S.C. § 362(a)(3). And as for the malpractice and negligence claims (Counts 16 and 17), Husch did not owe plaintiff a duty. Husch did not represent plaintiff. The attorney of a bankruptcy trustee owes no duty to creditors. *In re Cont'l Coin Corp.*, 380 B.R. 1, 16 (Bankr. C.D. Cal. 2007). (Duty is also an element of these claims—resulting in failure to state a claim, in addition to the standing problem.)

Plaintiff's lack of standing to bring claims against Husch applies to all of plaintiff's claims. Because plaintiff's claims are futile for other reasons, though, the court will continue to evaluate defendants' arguments for dismissal.

### b. Res Judicata

Second, defendants argue that plaintiff's claims are barred by the doctrine of res judicata because his claims were compulsory challenges to Husch's fee applications for Husch's representation of the Special Master and the Chapter 11 Trustee. Courts approved Husch's fee applications, and those orders are final. According to defendants, plaintiff cannot challenge the representation related to those fees now.

The doctrine of res judicata bars claims that already have been litigated or could have been raised in prior litigation. *Nwosun v. Gen. Mills Rest., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997); *Saville v. Int'l Bus. Mach. Corp.*, 127 F. App'x 404, 405–06 (10th Cir. 2005). Orders approving attorney fees have a res judicata effect on subsequent claims against the professionals for those services. *See Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490–92

(D.C. Cir. 2009) (precluding claims for malpractice, breach of fiduciary duty, and professional misconduct); *Grausz v. Englander*, 321 F.3d 467, 472–75 (4th Cir. 2003) (barring malpractice claim); *Osherow v. Ernst & Young LLP*, 200 F.3d 382, 387–88 (5th Cir. 2000) (holding that res judicata barred claims for breach of professional duty, negligence, gross negligence, breach of contract, breach of warranty, and deceptive practices). When a professional requests a fee award from the court, the appropriateness and reasonableness of services are at issue. This means that parties with notice of the application must raise any claims arising from the services as a compulsory counterclaim. *In re Iannochino*, 242 F.3d 36, 47–48 (1st Cir. 2001); *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2008 WL 917635, at *9 n.52, n.55 (D. Kan. Mar. 31, 2008).

Counts 1, 2, 3, 6, and 7 arise out of Husch's representation of the Special Master prior to Brooke's bankruptcy. The court approved Husch's fee application in the suit against the Special Master. Plaintiff had notice and an opportunity to object to the fees at that time. He did not. The fee order is a final order because Husch's representation was discrete and ended. *See In re Iannochino*, 242 F.3d at 44. And Husch was not obligated to raise plaintiff's complaints for him. Plaintiff had his own separate counsel at the relevant time. The fee order in that case therefore operates as res judicata for plaintiff's claims relating to the services resulting in those fees.

Counts 4 and 5 relate to Husch's actions during Brooke's Chapter 11 bankruptcy proceeding. Count 4 alleges that Husch's actions in becoming employed as counsel for the Chapter 11 Trustee were fraudulent, and Count 5 alleges that Husch fraudulently omitted information from the Chapter 11 schedules. Husch requested approval of fees from the court on October 13, 2009 for the Chapter 11 proceeding services. Again, plaintiff did not object despite notice and opportunity. The bankruptcy court's fee order operates as a final adjudication, barring claims against Husch for its conduct during the Chapter 11 proceeding.

Plaintiff's claims for post-bankruptcy conduct are similarly barred. Plaintiff admits that his pre-bankruptcy claims and post-bankruptcy claims are connected in the following way: Post-bankruptcy, Husch improperly used "its position as legal counsel and trustee for the bankruptcy estates to avoid culpability for its pre-bankruptcy misconduct." (Doc. 22, at 2.) In other words, plaintiff's post-bankruptcy claims are for cover-up of Husch's pre-bankruptcy actions. The post-bankruptcy claims are dependent on the pre-bankruptcy claims. Because there is no valid cause of action for the underlying pre-bankruptcy claims, there cannot be a valid cause of action for attempting to cover up the existence of such claims. Res judicata therefore acts to bar all of plaintiff's claims.

In his supplemental response, plaintiff suggests that his post-bankruptcy claims are really about Husch fraudulently obtaining the BHI judgment, which in turn resulted in plaintiff's bankruptcy claim being disallowed. The court questions this interpretation of plaintiff's amended complaint. Nevertheless, this fraud claim is still barred by res judicata because the BHI judgment is a final judgment on the merits. Plaintiff cannot now contest the propriety of that judgment. For all of these reasons, plaintiff's claims are barred.

### c. Judicial Estoppel

Third, defendants seek dismissal of plaintiff's claims because he failed to disclose his claims against Husch in his personal bankruptcy. Debtors must list all of their debts and assets (including potential causes of action) on their bankruptcy schedules. *Brumfiel v. U.S. Bank*, 618 F. App'x 933, 937 (10th Cir. 2015). When a debtor fails to list a claim on his asset schedule, judicial estoppel bars the debtor from later pursuing that claim. *Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1157–60 (10th Cir. 2007).

Plaintiff's pre-bankruptcy claims and some of his post-bankruptcy claims arose before plaintiff filed for personal bankruptcy on December 16, 2008. Plaintiff identified his claims against the Special

-10-

Master, but did not identify any potential claims against Husch when he filed his original bankruptcy schedules on January 7, 2009. He also did not name Husch when he amended his schedules on February 13, 2009. At this time, the record shows that plaintiff both understood his duty to disclose claims in bankruptcy, and knew of the conduct giving rise to the instant cause of action. Plaintiff's listing of "unknown claims against unknown parties" was not sufficient to properly disclose his potential claims against Husch to the bankruptcy court. Neither was plaintiff's listing of claims against the Special Master. Husch is the law firm that represented the Special Master. They are not the same. Indeed, if they were, all claims against Husch would be barred by res judicata because of plaintiff's previous suit against the Special Master.

Because plaintiff did not disclose his potential claims against Husch to the bankruptcy court in his personal bankruptcy, judicial estoppel prevents him from raising the claims now. This doctrine provides an independent reason for dismissing all of the pre-bankruptcy claims and some of the post-bankruptcy claims. Those post-bankruptcy claims that did not arise before plaintiff filed for personal bankruptcy are likewise barred for the same reasons the claims are barred based on res judicata—they are dependent on the validity of the pre-bankruptcy claims.

### d. Statute of Limitations

Fourth, defendants maintain that all of plaintiff's claims are barred by the statute of limitations. The conduct that is the subject of plaintiff's claims happened long ago, and claims arising out of that conduct are time-barred. Tort claims in Kansas are bound by a two-year statute of limitations. This period begins when an injury is known or reasonably ascertainable. Kan. Stat. Ann. § 60-513(a)–(b). Claims for unjust enrichment are bound by a three-year period, beginning when all of the elements are present. Kan. Stat. Ann. § 60-512; *Socophi S.P.R.L. v. Airport Sys. Int'l, Inc.*, 30 F. App'x 862, 864 (10th Cir. 2002) (citation omitted).

Plaintiff was aware of his pre-bankruptcy claims and injuries contemporaneously with their occurrence in 2008. He admits that his "causes of action against Husch [were] well documented with written protests" from October 2–8, 2008. None accrued later than December 12, 2008, making their expiration dates well before the time plaintiff filed this suit. Although plaintiff's personal bankruptcy tolled claims for two years from his petition date (which was December 16, 2008), this tolling still did not extend for enough time to save plaintiff's claims. At the latest, the statute of limitations on plaintiff's pre-bankruptcy tort claims expired on December 16, 2010. The statute for plaintiff's pre-bankruptcy unjust enrichment claim expired, at the latest, three years after Husch ceased representing the Special Master on October 28, 2008. Plaintiff's personal bankruptcy does not extend the statute in this case because the natural limitations period is longer. At the latest, the statute of limitations for this claim expired on October 28, 2011. Again, this date is well before plaintiff filed this suit.

As for plaintiff's post-bankruptcy claims, as previously mentioned, they are derivative of plaintiff's pre-bankruptcy claims. To the extent that plaintiff is attempting to show that Husch's post-bankruptcy acts were "new" acts to cover up the prior acts, the statute of limitations does not reset with each new act. *N. Nat'l Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 630–31 (10th Cir. 2008). And even if the claims were independent, the alleged final act was the filing of the BHI Suit—October 26, 2010. Applying the two-year statute of limitations for torts, these claims were barred as of October 26, 2012. Or, even assuming plaintiff did not immediately know of the suit, the statute would begin to run at the latest when plaintiff filed a pleading in that suit (after judgment)—on July 24, 2012. In either situation, the fraud claims are barred because they were not raised before July 24, 2014. To the extent the final alleged act is the judgment in the BHI suit, that occurred on July 10, 2014, and plaintiff was served with notice that same day. The statute of limitations on causes of action arising out of that judgment ran on July 10, 2016—still three months before plaintiff filed this suit.

Plaintiff attempts to show that the statute of limitations should have been tolled for a number of reasons: duress, equitable estoppel, equitable tolling, concealment, and judicial estoppel. None of these doctrines operate to save plaintiff's claims.

Duress: Plaintiff's allegations of duress do not extend the statutes of limitations beyond the dates identified above. Plaintiff essentially claims that Husch caused the delay in filing suit by intimidating him and financially starving him when Husch filed an adversary action against plaintiff's family. Even accepting plaintiff's allegations as true, duress does not toll the statute of limitations. *P.W.P. v. L.S.*, 969 P.2d 896, 904 (Kan. 1998). And any alleged duress plaintiff experienced did not prevent him from filing the lawsuit against the Special Master in 2010.

Equitable Estoppel: The doctrine of equitable estoppel also does not save plaintiff's claims. For equitable estoppel to apply, the party asserting estoppel must be ignorant of the facts giving rise to the claim. *Spaulding v. United Transp. Union*, 279 F.3d 901, 909 (10th Cir. 2002). Plaintiff admittedly knew of the facts giving rise to his claims.

Equitable Tolling: The same problem exists for equitable tolling. Equitable tolling is a "rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008). Extraordinary circumstances are not present here.

Concealment: Any concealment on the part of Husch did not conceal the facts of plaintiff's claims from him. Even accepting that Husch concealed facts from the court does not operate to extend the time for plaintiff to file a lawsuit based on actions of which he was aware.

Judicial Estoppel: This doctrine also does not apply in this situation. The court will not go into detail here, but plaintiff claims that Husch's arguments are now inconsistent with previous arguments. The court disagrees. The statements were not made by Husch and were not accepted by the court. *See*

*Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068–69 (10th Cir. 2005) (identifying elements for judicial estoppel). Plaintiff cannot meet the elements for judicial estoppel in these circumstances.

Plaintiff's claims are time-barred, and are subject to dismissal for this independent reason, as well.

### e. Failure to State a Claim

Finally, defendants attack some of plaintiff's claims for failure to state a claim. Because plaintiff's claims cannot survive any of defendants' other challenges, the court need not address the claims on their merits.

### **IV.** **Conclusion**

For all of the reasons stated above, the court determines that plaintiff's case should be dismissed. The court recognizes that plaintiff made a number of arguments that the court did not directly address in this Memorandum and Order. Plaintiff also made a number of arguments that were more detailed than the rulings that the court issues here. The court did, however, consider all of those arguments. In the interest of brevity, the court did not repeat them all. But none of them changes the ultimate outcome of this case: it remains subject to dismissal.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss (Doc. 8) is granted. The case is closed.

Dated this 5th day of September, 2017, at Kansas City, Kansas.

          **s/ Carlos Murguia**
          **CARLOS MURGUIA**
          **United States District Judge**